IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THOMAS BROWN, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 7:08CV00521 |
| ) | |
| NIPPER AUTO PARTS AND ) | |
| SUPPLIES, INC., ) | |
| ) | |
|     Defendant ) | |

**DEFENDANT'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Statement of the Case

Defendant Nipper Auto Parts and Supplies, Inc. ("Nipper Auto Parts") filed a Motion for Summary Judgment in this Fair Labor Standards Act ("FLSA") action on March 16, 2009, along with a supporting memorandum. (Docket Nos. 10 and 11). Plaintiff Thomas Brown ("Brown") filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment on April 2, 2009 (Docket No. 15).  Nipper Auto Parts now replies.

Argument

**I.   BROWN'S PRIMARY DUTIES, WHICH INCLUDED PLACING STOCK AND SPECIAL ORDERS, SATISFIED THE SECOND PRONG OF THE THREE PART TEST FOR THE ADMINISTRATIVE EXEMPTION.**

Brown agrees that his weekly compensation met the salary basis prong of the three-part test for the administrative exemption under 29 C.F.R. § 541.200. Brown also offers no substantive  argument in his Memorandum in Opposition to Defendant's Motion for Summary

Judgment that he lacked sufficient discretion to meet the third prong of the administrative exemption. This third prong requires that the employee's primary duty merely "include" the exercise of discretion and independent judgment. 29 C.F.R. § 541.200; 29 C.F.R. 541.202(a); 69 Fed. Reg. 22,142 – 22,143 (April 23, 2004) (explaining that under the revised FLSA regulations, "The requirement that the primary duty must 'include' the exercise of discretion and independent judgment -- rather than 'customarily and regularly' exercise discretion and independent judgment -- is not a change from current law.") citing O'Dell v. Alyeska Pipeline Service Co., 856 F.2d 1452 (9th Cir. 1988) and Dymond v. United States Postal Service, 670 F.2d 93 (8th Cir. 1982); Wilshin v. Allstate Insurance Co., 212 F.Supp.2d 1360, 1378 (M.D. Ga. 2002) ("There is no requirement that all or even most of Plaintiff's work involve discretion and independent judgment; the employee's work need only include use of discretion or independent judgment."). Because he did not respond to Nipper Auto Part's memorandum regarding the second prong, (see Defendant's Memorandum in Support of Motion for Summary Judgment, Docket No. 11, pp. 9-15),  Brown should be deemed to have conceded that his job "included" the exercise of discretion within the meaning of the three-pronged test.

Brown opposition to summary judgment is based on the second prong of the three-pronged test.  Under the second prong, the employee's primary duty must involve "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.200. Because Brown's primary duty related to the management or general business operations of this small business, the Court should enter summary judgment in favor of Nipper Auto Parts.

A. Brown's Stock And Special Procurements Were Exempt Activities.

A significant part of Brown's daily job duties involved placing orders of inventory and merchandise for the business without direct supervision. (Brown Dep., 43-49; Johnson Dep., 52; Nipper Dep., 27-28; 60). Brown placed two types of orders: stock inventory orders and special inventory orders. He was responsible for ordering all musical supplies and most of the tire products kept on the store shelves. Tire and musical products purchased routinely by Brown on behalf of the business were stock orders. (Brown Dep., 49; 51-53; Johnson Dep., 13-15; 35-36; 43-44; Nipper Dep., 60). In his memorandum, Brown acknowledges that activities such as purchasing, procuring and ordering inventory " . . . can be exempt administrative duties in the proper context." (Pff. Memo., p. 7). No material dispute, then, exists that by ordering musical supplies and tire products Brown performed exempt administrative activities. Brown nonetheless opposes summary judgment on the grounds that stock orders formed too small a part of his job to qualify him for the administrative exemption. (Pff. Memo., p. 7).

In addition to placing stock orders on a regular basis for tire and musical products, Brown also placed special orders for a wide range of truck and automobile parts. Brown does not dispute that placing special orders occupied much of his working day at Nipper Auto Parts. His only argument is that when he placed a special order he neither acquired "inventory" nor made a "purchase" on behalf of the business. (Pff. Memo., pp. 7-11) Brown's reasoning is unsupported by the record and contrary to the plain meaning of the Secretary's FLSA regulations.

Brown is wrong when he argues on brief that his special orders did not bind or obligate the company. Asked for examples of Brown's authority to bind the company, store manager

3

Jeff Johnson ("Johnson") testified, " . . . He didn't have to ask to special order these parts everyday that we ordered all day long every day. . . ." (Johnson Dep., 52). A special order is a "purchase" or "procurement" of a product by Nipper Auto Parts, which the store then *resells* to its customer. (Declaration of R. Nipper., para. 9; Nipper Dep., 62-63; 67). As Nipper explained, ". . . [A]nything [Brown] ordered was purchased by Nipper Auto Parts." (Nipper Dep., 63). If the customer refuses to purchase a specially ordered product from Nipper Auto Parts, the store must "eat the cost for a certain amount of the time" before returning the item to the supplier. (Nipper Dep., 67). Nipper Auto Parts must pay a return fee to the supplier and incur the cost of shipment on any returned item. The return fee is a percentage of the price of the product. (Nipper Dep., 67).

Brown's argument that special ordering of merchandise is not exempt activity under the Secretary's regulations also is wrong as a matter of law. In several parts of her regulatory scheme, the Secretary describes "procurement," "ordering" and "purchasing" as exempt activities. Thus in 29 C.F.R. § 541.201 the Secretary indicates that "selling a product in a retail or service establishment"[1] is not an exempt activity, but that both "purchasing" and "procurement" are exempt functions.

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . purchasing; procurement; . . . and similar activities.

29 C.F.R. § 541.201(b).

---

[1] Brown's weighty reliance upon the quoted phrase from 29 C.F.R. § 541.201(a) is misguided because Nipper Auto Parts is primarily a wholesale distributor to commercial garages rather than a retailer. (Declaration of R. Nipper, para. 6-9). But even if Nipper Auto Parts were primarily a retail level business, summary judgment for the defendant would be warranted.

4

The Secretary does not state in this regulation that only stock inventory purchasing is exempt. Indeed, the term "inventory" does not appear in 29 C.F.R. § 541.201(b). Brown's argument that special orders do not reflect "purchasing" also is rendered irrelevant by this regulation. Even if, as Brown insists, a special order were not a "purchase" by Nipper Auto Parts (an argument that is belied by the facts), a special order clearly is a "procurement" by Nipper Auto Parts under this regulation.

Another regulation Brown glosses over in arguing that placing special orders is nonexempt activity is 29 C.F.R. § 541.700(c). There, the Secretary defines and describes the important requirement that before classifying an employee as exempt or nonexempt the employer must determine that person's "primary duty." The Secretary explicitly states that "ordering merchandise" is an exempt activity. 29 C.F.R. § 541.700(c). The Secretary in that regulation does not limit exempt activity to ordering stock inventory. Brown does not deny that the countless auto products he specially ordered each day as part of his primary duty were "merchandise."

Finally, in 29 C.F.R. § 541.203(f), the Secretary states, "[P]urchasing agents with authority to bind the company on significant purchases generally meet the duties requirements for the administrative exemption . . . ." 29 C.F.R. § 541.203(f). Brown was a purchasing agent vested with authority to bind the company through both stock and special orders. (Nipper Dep., 57-58; Johnson Dep., 52).

Brown's argument that his special orders on behalf of Nipper Auto Parts were not exempt activities is flatly inconsistent with Judge Blake's analysis in <u>Stricker v. Eastern Off Road Equipment</u>, 935 F.Supp. 650 (D. Md. 1996), a decision the plaintiff agrees was correctly

5

decided. In *Stricker*, at id., the court expressly held that placing special orders is an exempt activity. Judge Blake characterized the plaintiff's special orders as "procurement of inventory." These procurements satisfied the regulatory requirement that to qualify for the administrative exemption the employee must perform work that assists with the servicing or running of the business. Id. at 657. "The plaintiff's work involving procurement of inventory, particularly special orders; . . . all involve matters which commit Eastern Off Road 'in substantial respects financially and otherwise.' " *Stricker*, 935 F.Supp. at 657 quoting 29 C.F.R. § 541.205(c).

Brown argues that *Stricker*, 935 F.Supp. at 657, is "drastically" different from the case at bar. According to Brown, the plaintiff in *Stricker*, at id., ran Eastern Off Road's Gaithersburg store by himself and was solely responsible for a wide range of duties that extended beyond making special orders. (Pff. Memo. Opp. p. 13).

Brown misses the significance of *Stricker*, at id., in two respects. First, applying the plain text of the Secretary's FLSA regulations, Judge Blake concluded that daily procurements by way of special orders *standing alone* satisfy the second prong of the three part test for the administrative exemption. *Stricker*, 935 F.Supp. at 657. Placing special orders occupied a major part of Brown's daily responsibilities at Nipper Auto Parts. (Brown Dep., 43-50). Like the plaintiff in *Stricker*, at id., Brown had other job responsibilities, including ringing up sales at the register. But since placing special orders played such an important part of his daily work activities, Brown qualifies for the administrative exemption, just like Stricker.

Second, Brown's role in the management of Nipper Auto Parts presents an even more compelling case for summary judgment in the employer's favor than did Stricker's role in the overall business operations of Eastern Off Road. Brown misreads *Stricker*, 935 F.Supp. at id., to

suggest that the plaintiff employee was solely in charge of his employer's general business operations on a continuous basis. Actually, Stricker never ran his employer's general business operations. Eastern Off Road was a large scale retailer with ". . . outlet stores in several States." Id. at 652. Nipper Auto Parts, in contrast, is a very small business which operates out of one location in rural Giles County, Virginia. Plainly, then, Brown's role in running the general business operations of the defendant employer in the case at bar is far more significant than Stricker's role in just one of Eastern Off Road's many stores. Moreover, contrary to Brown's summary of *Stricker*, 935 F.Supp. at 650, Stricker was not continuously in sole charge of even this single location. "At various times, the plaintiff worked alone in the store, worked with a subordinate assistant manager, and worked with a 'co-manager.' " *Stricker*, 935 F.Supp. at 657 and n. 6. Stricker supervised a subordinate employee for only a five month period. During the remainder of his employment, Stricker did not supervise anyone but frequently worked with a "co-manager." Id. at 657. Brown on the other hand had continuous supervisory authority over Harold Shultz ("Shultz") and worked as a team with Johnson and Nipper throughout the plaintiff's 32 months with Nipper Auto Parts. (Shultz Dep., 6; Brown Dep., 54; Johnson Dep., 52; 57; Nipper Dep., 57-58).

Along with placement of special and routine orders, Stricker and Brown had other managerial job duties in common. In granting summary judgment to Eastern Off Road, Judge Blake cited Stricker's performance of several

> . . . duties associated with running a retail establishment. For example, the plaintiff testified that he was responsible for organizing the charges, balancing the cash register, organizing the sales tickets or invoices, . . . recording and logging special orders . . . . The plaintiff also would . . . open the store in the morning and close it at night . . . .

*Stricker*, 935 F.Supp. at 656-57 [internal quotations and brackets omitted].

Stricker performed these and other operational duties "[e]ither alone, or with a co-manager . . ." on a daily basis. Id. at 659.

Brown fails to acknowledge that he performed similar operational duties for Nipper Auto Parts on a daily basis. Along with Johnson, Nipper opened and closed the store every day. (Johnson Dep., 10-11). At the end of each day, while Johnson closed the computer system, Brown balanced the cash register by comparing daily receipts with daily sales reports. (Johnson Dep., 39-40; 48-49). While Stricker carried out these administrative tasks for only one of Eastern Off Road's numerous locations, Brown's work was more significant because it related directly to his employer's *entire* business operation.

B.   Brown's Supervision Of Harold Shultz Was An Exempt Activity.

Directing the work of a lower rank employee may satisfy the second prong of the administrative exemption test because it is an activity or service which relates to the "management or general business operations" of the employer. 29 C.F.R. § 541.200. In his memorandum, Brown attempts to avoid summary judgment by downplaying his authority over Shultz. (Pff. Memo., p. 4). This argument is contradicted by the deposition testimony of Brown and other witnesses. Brown acknowledged that part of his duties involved directing Shultz to make drive errands. (Brown Dep., 54). Johnson confirmed that Brown directed Shultz to make deliveries of products to the store's commercial customers.

| | |
|---|---|
| Q. | Did Tom Brown ever direct the work of Harold? |
| Johnson. | Yes. |
| Q. | What did he tell him to do? |
| Johnson. | If we had a delivery to go say Harold, these parts have to go here, Harold, these parts need to go here. |

(Johnson Dep., 44).

Similarly, when asked for examples of Brown's authority to bind the company, Johnson testified that Brown "had the authority to tell Harold if he needed to make a delivery or not." (Johnson Dep., 52). Nipper's testimony supported that of Brown and Johnson that the plaintiff directed Shultz to make deliveries. (Nipper Dep., 57).

Despite his own testimony and that of Johnson and Nipper, the plaintiff now scrambles to circumvent summary judgment by arguing that only Johnson and Nipper sent Shultz on deliveries. Brown relies upon the following testimony by Shultz.

> Q. Do you decide the route that you're going to take to get all those delivered or does somebody else decide that?
>
> Shultz. Jeff and Roger usually decides that.
>
> Q. So Jeff and Roger will tell you okay, we want you to go to this place first, this place second, this place third then come back?
>
> Shultz. Right.

(Shultz Dep., 8).

This deposition testimony from 2009 does not support Brown's newfound claim that only Johnson and Nipper sent Shultz on deliveries in 2006-2008. Shultz offered this testimony in response to questions in the present tense from plaintiff's counsel. Brown quit in July 2008. Brown's counsel did not ask Shultz if Brown sent him on drive errands when Brown was employed there, presumably because the plaintiff had just confirmed under oath that sending Shultz on drive errands was part of his job. (Brown Dep., 54).[2]

---

[2] Brown was the first deponent. Shultz testified after Brown.

9

Brown's supervisory authority over Shultz in any event was broader than sending him on deliveries. Shultz explained that Brown on a daily basis instructed him to "mop, clean the floors, sweep the floors, bathroom, stuff like that." (Shultz Dep., 6; see also Johnson Dep., 44). Brown does not deny that he had this supervisory authority, but asks the Court to ignore it on the grounds that Nipper and Johnson also supervised Shultz. (Pff. Memo., p. 12). Brown points to 29 C.F.R. § 541.104, which requires that to qualify for the *executive* exemption the employee must supervise two subordinates.

The executive exemption is not in issue. The issue is whether Brown's primary duty involved work "directly related to management or the general business operations" of Nipper Auto Parts so as to meet the administrative exemption. 29 C.F.R. § 541.200. Supervising the business' sole, hourly worker in areas such as cleaning the store is clearly related to management or general business operations. Stated differently, directing Shultz to keep the site clean was related to "assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). See Cowan v. Tricolor, 869 F.Supp. 262, 264-65 (D. Del. 1994) (holding that employee of retail business was exempt administrator because her primary activities included a number of duties related to management, such as "supervising another employee"); see also *Stricker*, 935 F.Supp. at 657-58 ("Although employees with these duties are frequently deemed executives for the purposes of FLSA, courts have held that such workers may be classified as administrators.").

The unremarkable fact that Nipper and Johnson also had supervisory authority over Shultz does not diminish Brown's status as an exempt, administrative employee. See 29 C.F.R. § 541.202(d). ("The fact that many employees perform identical work or work of the same

10

relative importance does not mean that the work of each such employee does not involve the exercise of discretion and independent judgment with respect to matters of significance.").

    C.    Brown Functioned As A Part Of Management In The Operation Of Nipper Auto Parts.

In his memorandum, Brown claims the record contains no evidence that he functioned as part of Nipper Auto Parts' three-person management team. (Pff. Memo., p. 4). Brown is incorrect.

Johnson testified that Brown was part of "management." (Johnson Dep., 50). Johnson explained that in setting daily, operational priorities, Brown contributed as a member of the three-person management team.

> Johnson.    All three of us really worked as a team if he [sic] had something going on. If this is our store in the middle here if we had parts going this way and we had parts going this way, we kind of all three had to get our heads together and make a decision who was going to be first, who was going to be next. Because Roger would have taken orders for this store, I took the order for this store, Tom took orders for this store. What was the significance of who got what first. And we had to talk about it as a team.

(Johnson Dep., 53-54; see also 56-57).

Nipper, like Johnson, testified that the three men operated as a team in running the business and maintaining its client base. Nipper consulted with both Johnson and Brown about the business. (Nipper Dep., 25-26; 30; 40-42; 58-59; 61-62). Because Brown was a part of management, he felt free to make suggestions to Nipper regarding business operations. (Nipper Dep., 61-62). See *Stricker*, 935 F.Supp. at 657 (explaining that offering advice to management is work related to general business operations and pointing to plaintiff's expression of "his

opinion about matters affecting the Gaithersburg store" as evidence that he was an exempt administrative employee).

During the business day, Brown's responsibilities included advising and maintaining the business' core group of commercial clients. (Johnson Dep., 57-58). Brown regularly offered these automotive garages expert advice on matters related to the client's choices among various types of parts and supplies. (Brown Dep., 55). See *Stricker*, 935 F.Supp. at 659 (ensuring that store's "customers were satisfied" was a managerial task performed by plaintiff).[3]

At the close of each day, Brown and Johnson worked as a team to close the business. While Johnson shut down the store's computer network, Brown counted the daily receipts and balanced the cash register, as discussed supra. These collaborative tasks are exempt activities because they are managerial in nature. Jones v. Virginia Oil Co., 69 Fed.Appx. 633, 638 (4th Cir. 2003) (citing employee's "managerial tasks," including "counting daily receipts," in granting employer summary judgment in FLSA action) citing Murray v. Stuckey's, 939 F.2d 614, 618 (8th Cir, 1991); *Stricker*, 935 F.Supp. at 656.

> D. In Arguing That His Primary Duty Was Not The Performance Of Exempt Work, Brown Ignores The Relevant Factors Set Forth In 29 C.F.R. § 541.700.

Nowhere in his memorandum does Brown acknowledge (much less apply) the Secretary's multifactor test for determining whether an employee's "primary duty" is the performance of exempt work.

---

[3] Brown has an Automotive Service Excellence certification, based on his performance on a national examination. (Brown Dep., 7-8).

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).

These relevant factors, when applied to Brown's work at Nipper Auto Parts, establish that his primary duty was the performance of exempt work. Purchasing inventory is a critical function for this small distributor. As discussed supra, Brown spent a good deal of the working day ordering merchandise from various suppliers. Asked how many orders he typically placed with suppliers in a day, Brown responded that he could not even estimate that figure, but that it was "a lot." (Brown Dep., 47-48). In his Declaration, Nipper estimates that Brown spent only 25% of his time each day at the cash register or computer terminal actually making a sale. (Declaration of R. Nipper, para. 9). The balance of Brown's time was spent ordering parts and engaging in other exempt activities without direct supervision. (Brown Dep., 42; 46-47; Johnson Dep., 52; Nipper Dep., 60).

Brown's "relative freedom from direct supervision" weighs heavily in favor of finding his primary duty was the performance of exempt work. See 29 C.F.R. § 541.700(a). The disparity between Brown's salary of $460.00-$480.00 a week and Shultz's $7.00 hour wage further disposes of his argument that his primary duty was the performance of nonexempt work. 29 C.F.R. § 541.700(a); see Haines v. Southern Retailers, 939 F.Supp. 441, 451 (E.D. Va. 1996) (holding that plaintiff's salary of $425.00 per week when compared with clerk's wage of $5.10 an hour weighed in favor of finding her primary duty involved exempt work); Jones v. Virginia Oil Co., 69 Fed.Appx. 633, 639 (4th Cir. 2003) (holding that plaintiff's salary of $585.00 for 60

hour work week when compared to nonexempt employees' wages of $6.00-$8.00 an hour indicated plaintiff's primary duty was performance of exempt work).

Disregarding the Secretary's primary duty test in 29 C.F.R. § 541.700, Brown relies instead on a decision by the United States Court of Appeals for the Third Circuit, Martin v. Cooper Electric Supply, 940 F.2d 896 (3rd Cir. 1991). The employer there, Cooper Electric, had 120 employees and gross annual sales in the late 1980's of $35,000,000. Id. at 899 and 906, note 9. The plaintiffs were a group of inside salesmen, whose primary job duties involved making telephone sales of Cooper Electric inventory at the wholesale level. Id. at 903. The court found that, "most of the goods sold by inside salespersons are from Cooper Electric's in-house inventory." Id. "[S]ometimes," when a customer requested a particular item that was not in Cooper Electric's in-house inventory, the salesmen "purchased" the product through a special order to another manufacturer. Id. at 904. Special orders, however, occurred only on an "intermittent" basis. Id. The salesmen did not place routine, stock inventory orders.

The court applied a rigid "administrative/productive work dichotomy" test under 29 C.F.R. § 541.205(a), a regulation that was rescinded in 2004. The salesmen were nonexempt, "production" workers under this superceded regulation rather than exempt administrative employees. Their job duties were limited to "producing" sales of goods instead of performing services related to the general operations of Cooper Electric, the court held. Id. at 905-06.

Brown's reliance upon *Cooper Electric*, 940 F.2d at 896 is misplaced. *Cooper Electric* at id., applied a FLSA regulation that has since been rescinded. Introducing the revised FLSA regulations in 2004, the Secretary indicated that the mechanistic, "administrative/productive work" dichotomy applied in some circuits (but which has never been adopted in the Fourth

14

Circuit) had been rejected or modified by many federal courts. Under the revised regulations, this dichotomy no longer serves as a dispositive test of whether an employee's primary duty is the performance of exempt work. Determinative factors now are set out in 29 C.F.R. § 541.700(a), quoted supra. The "administrative/productive work" dichotomy applied in *Cooper Electric*, 940 F.2d at 896, remains relevant as an analytical tool only when the employee's duties fall clearly and exclusively on the "production" side of the business.

> The Department believes that our proposal struck the proper balance on the "production versus staff" dichotomy. We do not believe that it is appropriate to eliminate the concept entirely from the administrative exemption, but neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption. . . . The final regulation is consistent with the Ninth Circuit's approach in [Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002)]: the "production versus staff" dichotomy is "one analytical tool" that should be used "toward answering the ultimate question," and is only determinative if the work "falls squarely on the production side of the line."

(69 Fed. Reg. 22,141, April 23, 2004) citing federal case law.

Here the "administrative/productive work dichotomy" is inappropriate because of the small size of Nipper Auto Parts and the central role Brown played in the company's daily operations. Brown's job duties were not clearly and exclusively on the "production" side of the line. Id. The employer here had only three employees other than Nipper and his spouse: Johnson, Brown and Shultz.[4] In such a small business,[5] no clear line divides "administrative" from "production" work. In *Cooper Electric*, 940 F.2d at 896, this dichotomy between staff

---

[4] Nipper's spouse, Linda Nipper, keeps the company's books on a part time basis. Roger Nipper is frequently at the store Monday-Friday, but he has no set schedule and sometimes leaves before the close of the day. He is only occasionally there on Saturdays. (Nipper Dep., 40).

[5] Nipper Auto Part's annual gross revenue is about $750,000. (Nipper Dep., 50). Twenty years ago Cooper Electric's gross annual sales were $35,000,000. *Cooper Electric*, 940 F.2d at 906 and n. 9.

versus productive workers was distinct because the salesmen spent "most" of their time selling products from the company's in-house inventory. Id. at 903. The court stressed that the Cooper Electric salesmen only "sometimes" placed special orders to outside manufacturers for ". . . products not already in Cooper's stock-in-inventory." Id. at 904. There was nothing "intermittent" or occasional about Brown's placement of stock and special inventory orders to NAPA and other manufacturers. Cf. *Cooper Electric* at 940 F.2d at 904. Brown testified that his inventory ordering responsibilities required "constant daily phone conversations" with these manufacturer's representatives. (Brown Dep., 49). Johnson likewise testified that Brown's job entailed unsupervised acquisition by special order of "these parts everyday that we ordered all day long every day." (Johnson Dep., 52). Equally important, unlike Brown, the Cooper Electric salesmen did not direct the work of anyone else; assist in replenishing the company's stock inventory; consult directly with the ownership and top management; balance the employer's daily receipts and cash register; or assist with opening and closing the entire business each day.

      While the *Cooper Electric* Court agreed that as a group the salesmen performed work that substantially affected the business operations of the entire company, the issue was whether each *individual* salesman affected those general business operations. Considered individually, none of the plaintiff salesmen substantially affected those general business operations. *Cooper Electric*, 940 F.2d at 906 ("[W]hether inside salespersons perform work of substantial importance to the management or operation of Cooper's business must be addressed in terms of the consequences of each employee's efforts alone, not the effect of the salespeople as a group.").

16

Here, in contrast, Brown's <u>individual</u> efforts were critical to the operation of Nipper Auto Parts, which is a tiny fraction of the size of Cooper Electric. Besides making sales, Brown performed a wide array of services related to management or operations of the entire company, as discussed <u>supra</u>.

Brown, then, figured much more prominently in the overall management and general business operations of Nipper Auto Parts than did Cooper Electric's salesmen in that 120-employee company. The "administrative/productive work" dichotomy applied by the *Cooper Electric* Court therefore is inapplicable in the case at bar.

## II. ALTERNATIVELY, EVEN ASSUMING, <u>ARGUENDO</u>, THAT GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT FOR NIPPER AUTO PARTS ON THE MERITS, THE COURT SHOULD GRANT DEFENDANT PARTIAL SUMMARY JUDGMENT ON THE ISSUES OF LIQUIDATED DAMAGES AND THE APPLICABLE LIMITATIONS PERIOD.

Even assuming, <u>arguendo</u>, Nipper Auto Parts misclassified Brown as exempt (which it does not concede), the company acted in good faith. For the reasons stated in Defendant's Memorandum in Support of Motion for Summary Judgment (Docket No. 11, pp. 16-18) and Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 14, pp. 16-18), the Court at a minimum should grant Nipper Auto Parts summary judgment on (A) Brown's claim for the benefit of the three-year statute of limitations under 29 U.S.C. § 255(a) and (B) Brown's demand for liquidated damages.

## Conclusion

For the foregoing reasons, and those set forth in Defendant's Memorandum in Support of Motion for Summary Judgment (Docket No. 11) and the Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Docket No. 14) the Court should grant Defendant's Motion for Summary Judgment.

                        NIPPER AUTO PARTS AND
                        SUPPLIES, INC.


                        By:_____s/Paul G. Beers
                              Of Counsel


Paul G. Beers (VSB # 26725)
Glenn, Feldmann, Darby & Goodlatte
37 Campbell Avenue, S.W.
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone (540) 224-8035
Facsimile (540) 224-8050
Email: pbeers@gfdg.com

Counsel for the Defendant

## Certificate of Service

I hereby certify that on April 9, 2009, I electronically filed the foregoing Defendant's Reply Memorandum in Support of Motion for Summary Judgment with the clerk of the Court using the CM/ECF system which will send notification of such filing to William C. Tucker, Esq., Butler, Williams & Skilling, P.C., 100 Shockoe Slip, 4th Floor, Richmond, Virginia 23219.

                                      _____s/Paul G. Beers
                                            Paul G. Beers